1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Criminal Number:** |
| **vs.** ) | |
| ) | |
| **DAVID WHITAKER,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the United States Attorney's Office for the District of the Virgin Islands as well as the Public Integrity Section, Criminal Division, United States Department of Justice (hereinafter "the Government" or "the United States"), and David Whitaker (hereinafter the "defendant") enter into the following Plea Agreement:

### Charges and Statutory Penalties

1.      The defendant agrees to plead guilty to Counts One and Two, in violation of 18 U.S.C. § 1343, and Count Three, in violation of 18 U.S.C. § 666, of the Information.

2.      The defendant understands that Counts One and Two have the following essential elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

>    a.  First, the defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises.

>    b.  Second, the defendant acted with the intent to defraud.

2

    c. Third, that in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

3.     The defendant understands that Count Three has the following essential elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

    a. First, at the time alleged in the information, ███████████ was an agent of Virgin Islands Police Department.

    b. Second, the Virgin Islands Police Department received federal benefits in excess of $10,000 in a one-year period.

    c. Third, that the defendant gave something of value to ███████

    d. Fourth, that the defendant acted corruptly with the intent to influence ███ ██████ with respect to a transaction or series of transactions of the Virgin Islands Police Department.

    e. Fifth, that the value of the transaction or series of transactions to which the payment related was at least $5,000.

4.     The defendant understands that pursuant to 18 U.S.C. § 1343, Counts One and Two carry a maximum sentence of 20 years of imprisonment, a fine of $250,000 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment per count, and a three-year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

3

5.    The defendant understands that pursuant to 18 U.S.C. § 666, Count Three carries a maximum sentence of 10 years of imprisonment, a fine of $250,000 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, and a three-year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

6.    If the Court accepts the defendant's pleas of guilty and the defendant fulfills each of the terms and conditions of this Plea Agreement, the United States agrees that it will not further prosecute the defendant for any crimes described in the attached factual basis or for any conduct of the defendant now known to the United States and to the law enforcement agents working with the United States on the present investigation.  This agreement does not provide any limitation of liability arising out of any acts of violence.

**Factual Stipulations**

7.    The defendant agrees that the attached "Factual Basis for Plea" fairly and accurately describes the defendant's actions and involvement in the offenses to which the defendant is pleading guilty.  The defendant knowingly, voluntarily, and truthfully admits the facts set forth in the Factual Basis for Plea.

**Sentencing**

8.    The defendant is aware that the sentence will be imposed by the court after considering the United States Sentencing Guidelines and related Policy Statements (hereinafter "U.S.S.G." or "Sentencing Guidelines").  The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation

4

conducted by the court's probation office, which will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise that advisory sentence up to and including the statutory maximum sentence, or lower that advisory sentence. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose that sentence, that the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and that such ultimate sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

9.    The United States reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Plea Agreement, the United States further reserves the right to make any recommendation as to the quality and quantity of punishment.

10.    The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not binding on the United States, the probation office, or the court, except as expressly provided in

5

this Plea Agreement.

### Sentencing Guidelines Stipulations

11.    The defendant understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines as set forth in the <u>Guidelines Manual</u> for 2023. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

    a.    <u>Offense Level under the Guidelines</u>

        i.    Count One:

            1. Base Offense Level: 7 (U.S.S.G § 2B1.1(a)(1))

            2. Specific Offense Characteristics: Loss Amount +8 (approximately $130,000) (U.S.S.G § 2B1.1(b)(1))

            3. Adjusted Offense Level: 15

        ii.    Count Two:

            1. Base Offense Level: 7 (U.S.S.G § 2B1.1(a)(1))

            2. Specific Offense Characteristics: Loss Amount +12 (approximately $400,000) (U.S.S.G § 2B1.1(b)(1))

            3. Adjusted Offense Level: 19

        iii.    Count Three:

            1. Base Offense Level: 12 (U.S.S.G § 2C1.1(a)(2))

            2. Specific Offense Characteristics: Multiple Bribes +2 (U.S.S.G § 2C1.1(b)(1)); Bribe Amount + 6 (approximately

6

$61,000) (U.S.S.G § 2C1.1(b)(2)); High-Level Public Official +4 (U.S.S.G § 2C1.1(b)(3)).

3. Adjusted Offense Level: 24

b. Acceptance of Responsibility

Provided that the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the United States, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, the United States agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G § 3E1.1(a).

The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

i.    fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

ii.   challenges the adequacy or sufficiency of the United States' offer of proof at any time after the plea is entered;

iii.  denies involvement in the offense;

iv.   gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

v.    fails to give complete and accurate information about the defendant's financial status to the Probation Office;

vi.   obstructs or attempts to obstruct justice, prior to sentencing;

vii.  has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed

7

to fully disclose such conduct to the United States prior to signing this Plea Agreement;

viii.    fails to appear in court as required;

ix.    after signing this Plea Agreement, engages in additional criminal conduct; or

x.    attempts to withdraw the plea of guilty.

If the defendant has accepted responsibility as described above, and the defendant's offense level is sixteen (16) or greater, the United States agrees that an additional 1-level reduction would be appropriate, pursuant to § 3E1.1(b) of the Sentencing Guidelines, because the defendant has assisted authorities by providing timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines Offense Level is 22 (U.S.S.G § 3D1.4) and provide the following to assist the Court, which includes the estimated Sentencing Guideline Ranges depending on the defendant's Criminal History Category, as determined by the Court ("Stipulated Guidelines Range(s)"). Parties agree and estimate that the defendant's Criminal History Category will be no higher than Category II, but acknowledge pursuant to paragraph 17 below that the Court is not bound by this estimate.

| ESTIMATED SENTENCING GUIDELINES CALCULATIONS COUNTS ONE - THREE | |
|---|---|
| **Count One – Wire Fraud:** | |
| Base Offense Level (U.S.S.G § 2B1.1(a)(1)) | 7 |
| Loss Amount Between $95,000 and $150,000 (U.S.S.G § 2B1.1(b)(1)) | +8 |
| *Count One Offense Level* | 15 |
| | |
| **Count Two – Wire Fraud:** | |
| Base Offense Level (U.S.S.G § 2B1.1(a)(1)) | 7 |
| Loss Amount Between $250,000 and $550,000 (U.S.S.G § 2B1.1(b)(1)) | +12 |
| *Count Two Offense Level* | 19 |
| | |
| **Count Three - Bribery Concerning Programs Receiving Federal Funds:** | |
| Base Offense Level (U.S.S.G. § 2C1.1(a)(2)) | 12 |
| More Than One Bribe (U.S.S.G. § 2C1.1(b)(1)) | +2 |
| Loss Amount Between $40,000 and $95,000 (U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(B)) | +6 |
| Offense Involved High-Level Public Official (U.S.S.G. § 2C1.1(b)(3)) | +4 |
| *Count Three Offense Level* | 24 |
| | |
| Grouping (U.S.S.G. § 3D1.4(a)) | +1 |
| | |
| Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1 | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | 22 |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |

With the exception of conditions detailed in Paragraph 14 of this Plea Agreement, the parties agree that under the Sentencing Guidelines neither a downward nor an upward departure from the Stipulated Guidelines Ranges set forth above is warranted. Accordingly, with the exception of conditions detailed in Paragraph 14 of this Plea Agreement, neither party will seek

9

such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Court consider such a departure or adjustment.

## Agreement as to Sentencing Allocution

12.     The parties further agree that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a). However, the parties agree that either party may seek a variance—a sentence outside of the Stipulated Guidelines Range—and suggest that the Court consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

In support of any variance argument, the defendant agrees to provide to the United States reports, motions, and documentation of any kind on which the defendant intends to rely at sentencing not later than twenty-one days before sentencing. Any basis for sentencing with respect to which all expert reports, motions, and documentation have not been provided to the United States at least twenty-one days before sentencing shall be deemed waived.





11



12

## Court Not Bound by the Plea Agreement

17.    It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues.  In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Plea Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

### Trial Rights

18.    The defendant understands and agrees that by pleading guilty in this case the defendant agrees to waive certain rights, including the following:

      a.  the right to plead not guilty and to persist in that plea;

      b.  the right to a jury trial;

      c.  the right to be represented by counsel—and if necessary to have the court appoint counsel—at trial and at every other stage of the proceeding;

      d.  the right at trial to confront and cross-examine adverse witnesses, and to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

      e.  the right to any further discovery or disclosures of information not already provided at the time of the entry of the guilty plea, other than information required to be disclosed under Federal Rule of Criminal Procedure 32(i)(2)

13

and exculpatory or impeachment information casting doubt upon sentencing factors.

**Venue**

19.    The defendant waives any challenge to venue in this district.

**Appeal, FOIA, and Privacy Act Waiver**

20.    The defendant is aware that the defendant has the right to challenge the defendant's sentence and guilty plea on direct appeal. The defendant is also aware that the defendant may, in some circumstances, be able to argue that the defendant's guilty plea should be set aside, or sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255). Knowing that, and in exchange for the promises made by the government in entering this Plea Agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, including any claim that the statute(s) to which the defendant pled is unconstitutional and/or that the conduct admitted as part of the factual basis does not fall within the scope of the statute(s), whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

14

a.  Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of the defendant's sentence.

b.  If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

    i.   that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth above;

    ii.  challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

    iii. challenging a decision by the sentencing judge to impose an "upward variance," pursuant to 18 U.S.C. § 3553(a), above the final Sentencing Guidelines range determined by the Court; and

    iv.  that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

21.  By signing this Plea Agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in paragraph 20 of this Plea Agreement with the defendant's

15

attorney. The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

22.    The defendant's waiver of rights in paragraph 20 shall not apply to appeals or challenges based on new legal principles in the United States Court of Appeals for the Third Circuit or the United States Supreme Court cases decided after the date of this Plea Agreement that are held by the United States Court of Appeals for the Third Circuit or the United States Supreme Court to have retroactive effect.

**Restitution**

23.    In addition to the other penalties provided by law, the Court must also order the defendant to make restitution pursuant to 18 U.S.C. § 3663A. The defendant understands that restitution must be ordered by the Court to all victims of the defendant's criminal conduct and not merely for those victims included in the counts to which the defendant agrees to plead guilty.

**Release/Detention**

24.    The defendant acknowledges that while the United States will not seek a change in the defendant's release conditions pending sentencing, the final decision regarding the defendant's bond status or detention will be made by the Court at the time of the defendant's plea of guilty. Should the defendant engage in further criminal conduct or violate any conditions of release prior to sentencing, however, the United States may move to change the defendant's conditions of release or move to revoke the defendant's release.

16

**Breach of Agreement**

25.     The defendant understands and agrees that if, after entering this Plea Agreement, the defendant fails specifically to perform or to fulfill completely each and every one of the defendant's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, the defendant will have breached this Plea Agreement.  In the event of such a breach: (a) the United States will be free from its obligations under the Plea Agreement; (b) the defendant will not have the right to withdraw the guilty plea; (c) the defendant shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the United States will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements made by the defendant and any of the information or materials provided by the defendant, including such statements, information, and materials provided pursuant to this Plea Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Plea Agreement, including the defendant's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

26.     The defendant understands that Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn.  The defendant knowingly and voluntarily waives the rights arising under these rules.

27.     The defendant understands and agrees that the United States shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence.  The defendant further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

17

28.    Nothing in this Plea Agreement shall be construed to permit the defendant to commit perjury, to make false statements or declarations, to obstruct justice, or to protect the defendant from prosecution for any crimes not included within this Plea Agreement or committed by the defendant after the execution of this Plea Agreement.  The defendant understands and agrees that the United States reserves the right to prosecute the defendant for any such offenses.  The defendant further understands that any perjury, false statements or declarations, or obstruction of justice relating to the defendant's obligations under this Plea Agreement shall constitute a breach of this Agreement.  In the event of such a breach, however, the defendant will not be permitted to withdraw this guilty plea.

**Waiver of Statute of Limitations**

29.    It is further agreed that should any conviction following the defendant's plea of guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement (including any counts that the United States has agreed not to prosecute or to dismiss at sentencing pursuant to this Plea Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution.  It is the defendant's intent in entering this Plea Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

**Complete Agreement**

30.    No agreements, promises, understandings, or representations have been made by the parties or their counsel—either orally, in writing, or by any other means—other than those contained in

18

writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by the defendant, defense counsel, and a prosecutor for the Public Integrity Section.

31.    The defendant further understands that this Plea Agreement is binding only upon the United States Attorney's Office for the District of the Virgin Islands and the Public Integrity Section, Criminal Division, United States Department of Justice.  This Plea Agreement does not bind any other office or component of the United States Department of Justice, including other United States Attorneys' Offices, nor does it bind any state or local authorities.  It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against the defendant.

32.    By signing the Plea Agreement in the space indicated below and returning the original once it has also been signed by counsel for the defendant, the defendant acknowledges that the terms and conditions of this Plea Agreement are satisfactory.

DELIA L. SMITH
United States Attorney, District of the Virgin Islands

Dated: 3/27/24        By: _____
                           MICHAEL J. CONLEY
                           Assistant United States Attorney

COREY R. AMUNDSON
Chief
Public Integrity Section

Dated: 27 Mar 24      By: _____
                           ALEXANDRE M. DEMPSEY
                           STEVEN I. LOEW
                           Trial Attorneys

19
## DEFENDANT'S ACCEPTANCE

I have read this Plea Agreement in its entirety and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States.  I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter.  I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case.  We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial.  I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty, and I believe this Plea Agreement is in my best interest.


Date: 3/27/2024

**David Whitaker**
Defendant

20
## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully.  These pages accurately and completely sets forth the entire Plea Agreement.  I concur in my client's desire to plead guilty as set forth in this Plea Agreement.

Date: 3/27/24

**David Cattie**
For the Defendant

## FACTUAL BASIS FOR PLEA

In conjunction with the submission of the accompanying Plea Agreement in this case, Defendant David Whitaker ("Defendant") admits that he is guilty as charged in Counts One through Three of the Information. Defendant admits and stipulates to the following:

## FACTS RELEVANT TO COUNTS 1-3:

1.  Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt to Counts One through Three of the Information. At trial, the United States would have proven beyond a reasonable doubt that Defendant Whitaker is guilty as charged in Counts One Through Three of the Information.

2.  Defendant registered a company called Mon Ethos[1] in January 2022 in the Virgin Islands. At all times relevant to this factual basis, Defendant had sole ownership and control of Mon Ethos.

3.  Defendant registered a subsidiary of Mon Ethos called the Office of Data Discovery Forensic Analysis ("ODDFA") in June 2022. At all times relevant to this factual basis, Defendant had sole operational control of ODDFA.

## FACTS RELEVANT TO COUNT 1:

4.  Beginning in or about June 2022 and continuing until in or about May 2023, Defendant was hired by the Virgin Islands Police Department ("VIPD") to investigate

---

[1] Defendant has registered multiple companies with the Mon Ethos name in both the Virgin Islands and/or other states. For the purposes of this document, all of these entities are collectively referred to as Mon Ethos.

allegations surrounding the placement of covert listening devices in Virgin Island government offices. This engagement led to the discovery of a miniature spy camera in the office of the Commissioner of the Virgin Islands Department of Personnel.

5.     During the subsequent investigation into the discovery of the miniature spy camera, Defendant claimed to have discovered an additional 13 surveillance devices hidden in various Virgin Island government offices, allegedly planted in these locations by others. In truth and in fact, Defendant planted 12 of the 13 additional devices discovered after the initial spy camera was discovered and then falsely represented to have found them in the government offices.

6.     Despite being the individual who planted the 12 additional surveillance devices, Defendant continued to claim that he found additional surveillance devices in Virgin Island government offices, and he billed the VIPD for his "work." Through this scheme, Defendant knowingly obtained money and property through materially false representations and submissions.

7.     Throughout the entire fraudulent investigation into the placement of surveillance cameras in Virgin Island government offices, Defendant submitted invoices totaling $130,195.10 for services related to the fraudulent investigation. Defendant submitted these invoices with the intent to defraud.

8.     As part of this scheme, Defendant knowingly caused the transmission of multiple writings, signals, and sounds of some kind by means of wire communication in interstate commerce. Specifically, Defendant caused at least one interstate wire communication to occur each time an invoice was paid for services related to this fraudulent investigation.

Each of the payments were wired through New York into Defendant's bank account in Puerto Rico.

## FACTS RELEVANT TO COUNT 2:

9.    In or about February 2021, Defendant submitted a Second Draw Borrower Application Form and accompanying documents on behalf of Mon Ethos (collectively the "Second Draw Application") to the Small Business Administration ("SBA") as part of the Paycheck Protection Program ("PPP"). This Second Draw Application requested a total of $469,903 from the PPP in the form of a potentially forgivable loan.

10.    The PPP was a program administered by the SBA intending to provide potentially forgivable loans to small businesses to help keep their workforces employed during the COVID-19 crisis. The PPP was a federally run program funded by the United States Department of the Treasury.

11.    Defendant knowingly and intentionally included materially false representations in the Second Draw Application as part of a scheme to defraud and obtain money by materially false and fraudulent representations. Specifically, the Second Draw Application included false statements about prior wages and compensation and associated tax payments allegedly paid to the IRS. Defendant submitted the Second Draw Application with the intent to defraud.

12.    Had the SBA known that Defendant's Second Draw Application included the false representations, the SBA would have denied Defendant's Second Draw Application.

13.    By submitting the Second Draw Application, Defendant knowingly caused the transmission of multiple writings, signals, and sounds of some kind by means of wire communication in interstate commerce. Specifically, Defendant caused at least one

interstate wire communication to occur when he submitted the Second Draw Application from a computer in the Virgin Islands to the SBA through servers based in Oregon.

**FACTS RELEVANT TO COUNT 3:**

14.    In calendar years 2022 and 2023, the VIPD received more than $10,000 in federal benefits in each calendar year.

15.    

16.    Beginning in or about November 2022 and continuing until in or about September 2023, Defendant paid bribes in the form of money and other things of value to ███████. In exchange for the bribes paid by Defendant, ███████ caused the payment of outstanding invoices, and caused additional contracts to be awarded to Defendant with the VIPD.

17.    In paying these bribes, Defendant acted corruptly with the intent to influence ███████ with respect to a transaction or series of transactions with the VIPD. Specifically, at the outset of the scheme, Defendant discussed and agreed with ███████ that if Defendant paid ███████ and provided financial assistance to a restaurant owned by ███████ would use his position as the ███████ to make sure that Defendant's outstanding invoices would be paid by approving and signing the final invoices and instructing others to sign off on the final invoices.

18.    In exchange for the bribes paid to ███████ caused payments to be made to Defendant by the VIPD under the contracts that were worth more than $5,000.

19.    From in or about November 2022 and continuing through in or about September 2023, Defendant provided ███████ with at least $66,000 worth of bribes. These bribes

included the purchase of restaurant supplies and equipment for ████ restaurant, payment for trips from Saint Thomas to Boston for ████ and others, and the payment of cash to ████ and his family. The expenses associated with the Boston trips included, but were not limited to, staying at the Encore Hotel, personal butler service throughout the stay, and tickets to local sporting events.

Michael Conley

Assistant U.S. Attorney

Dated: 3/27/24

Alexandre M. Dempsey

Trial Attorney

Dated: 27 March 2024

David J. Cattie

Counsel for Defendant

Dated: 3/27/24

David Whitaker

Defendant

Dated: 3/27/24